Our first case of the afternoon is People of the State of Illinois v. Antwon Brown for the appellant Erica Cook. Ms. Cook, and for Mr. McNeil and Mr. Robinson, you can split your time. Very good. You may proceed. May it please the court, counsel. I am Erica Nichols Cook with the Office of the State Appellate Defender here today on behalf of Mr. Antwon Brown. First, I'd like to address this court's questions regarding the application of Castleberry to the improperly imposed fines and raise an argument too. It's our position that Castleberry doesn't apply in this case. This is a direct appeal where the clerk imposed fines that the court did not order, and so the clerk doesn't have jurisdiction to impose fines. They are part of the sentence and part of the punishment, and the judge is the only one that can impose the sentence. And so it would be our argument that Castleberry doesn't have an application here. This court can reach the improperly imposed fines under the second prong of plain error or under cabbiero. Does the court have any questions for me regarding Castleberry's application? No. Okay. Next, I'd like to go ahead and turn to our Batson issue here, raise an argument one on behalf of Mr. Brown. Your Honors, there was three minority members in this jury veneer in this panel. The first was a Native American, the other two were African American, and they all said they could be fair and impartial during the jury selection. I'd like to talk about the Native American first. He's identified in the record as Juror 107, and he told the court he ran the Native American Studies program at the U of I, that he had many friends and relatives that were members of law enforcement, but they were all outside of the Champaign-Urbana community. That he also had relatives who had been convicted of criminal offenses, but again, outside of the Champaign-Urbana community. And that he had a specific experience with the University of Illinois Police that he did describe as negative, and that he expressed a concern about evaluating that specific officer's testimony fairly. And then the state offered during the Batson proceedings that Juror 107 had multiple negative experiences with law enforcement, and that he was concerned about the friends he had in law enforcement and the relatives with convictions, and that 107 admitted he couldn't weigh police officer testimony fairly. And so those are the offered justifications for the strike of Juror 107. I'd like to move on now to Juror 9-9. He was the first African American juror to be struck. He told the court he worked in engineering services at Carle. He disclosed a prior misdemeanor conviction that had occurred in the year 2000, approximately 14 years prior to this trial, and that it occurred outside of the Champaign-Urbana area. He referred to that as a negative experience with law enforcement. And then he also talked about a traffic stop in the Champaign community happening two years prior. During Batson proceedings, the state offered that Juror 9-9 was inconsistent, that his answers about the prior misdemeanor were varied about the timing, and that he didn't disclose that he received a jail sentence on the traffic driving while license suspended conviction. The last juror struck was Juror 148, also an African American. He worked there at a local bar and restaurant in Champaign, and he told the court he did not have any negative law enforcement experiences, and that he simply hadn't agreed with what had happened six or seven years previously with the Urbana police. However, during Batson proceedings, the prosecutor said that he struck Juror 148 because he had a negative law enforcement experience, and that he had undisclosed criminal convictions, but admitted he didn't ask him about those. He hadn't gotten that far in his questioning. So, what happened here is the trial court erred at the third stage of Batson, because they answered the wrong question. The judge says, I find these justifications to be non-discriminatory. However, at the third stage, the court is supposed to be looking at the totality of the circumstances, at all relevant factors, and determine whether there is evidence of purposeful discrimination. And we have guidance from Miller L2, which gives us plenty of pretext for discrimination that the trial court here did not consider. First, there's the failure to ask questions, to engage in a meaningful verdire. This prosecutor admitted he didn't follow up with 148 or ask him about these convictions that he had shown on his background check, but that the juror didn't disclose when asked. He didn't follow up with Juror 99 about whether he'd gone to jail for this traffic offense that he said he paid a fine on. And there's no attempt at any rehabilitation by anybody for any of these jurors. Nobody says, well, despite that experience, can you still be fair and impartial here? And the Supreme Court in Miller L2 said that the failure to engage in a meaningful verdire that the state is concerned about is evidence suggesting the explanation is a sham and a pretext for discrimination. So we would argue here that the trial court did not take this into consideration. Additionally, the prosecutor here mischaracterizes the juror's own statements when he is explaining his justifications for the strikes. With Juror 107, he says multiple negative experiences, where Juror 107 was very clear. There was one specific instance, one specific officer. And the prosecutor turns this into this broad generalization that he can't weigh any police officer testimony fairly. But that's not the question that 107 has asked. Additionally, Juror 99, the prosecutor says, oh, he's inconsistent. He wasn't telling me the truth. The record completely refutes that. Juror 9 consistently says, it was the year 2000. It was 14 years ago. The prosecutor asks him, was it 10 years ago? And the juror says, no, 14. So that is a blatant mischaracterization of the juror's testimony that is then used as justification to strike him from this jury. Additionally, the court could have engaged and should have engaged in a comparative juror analysis. There were two white jurors, numbers 3 and 67, who both disclosed criminal convictions. The state didn't ask them any questions about those. They were allowed to serve on the jury. And yet, the fact that Juror 107 has family members with convictions is concerned, and the fact that 148 has these undisclosed convictions that he doesn't ask them about, that's justification. Let me ask you a question. Is there a difference between a juror that discloses it up front and a juror that doesn't? In the mind of the prosecutor? Yes, I'm sure there is. I think the problem here is that the prosecutor, as soon as Juror 148 said, I didn't agree with what the Urbana police did 6 or 7 years ago, he doesn't ask him about the supposed convictions. The prosecutor tells the court, you know I have access to background. So I think from that we have to infer he ran some criminal background checks. That information is not put on the record, it's not shared with defense counsel as far as we can tell, and he doesn't confront the juror with it in any way to confirm that he does actually have convictions and that he failed to disclose. So here we have this assumption being made that he's the person on this background and no actual evidence in the record to support that. Did the defense bring to the trial judge's attention these other two jurors that you say have a similar background but were accepted? The defense counsel wasn't given any opportunity for rebuttal and so it doesn't appear in the Batson proceedings. The prosecutor gives his reasons and the court says, I find these to be non-discriminatory, motion denied. So in addition to the comparative juror analysis, this prosecutor gets confused about the two black jurors, about 148 and 99. When he's offering these reasons, he mixes them up and I think that's further evidence of pretext and perhaps implicit bias or discrimination that this prosecutor exhibited that the trial court doesn't consider. And then lastly, the trial court could consider that the state's very criteria, negative experience with law enforcement, criminal convictions, they have a disparate impact on the minority population. Our very own legislature has a study commission that notes, in general, criminal convictions and negative experiences with law enforcement disproportionately occur in minority communities. The jury selection in this case is further evidence of this because when you're looking at a panel of 28, 30 people, you have three minorities, the only three that ever had a bad experience with the police are all minorities. The trial court should have considered that as an additional factor, that this supposed criteria that wasn't being applied equally to white members of the jury disproportionately affects the minority population. And that is additional evidence of pretext leading to a finding of purposeful discrimination in this jury selection. So, in conclusion, the trial court erred when he accepted these justifications at their face value without completing the third step analysis and examining all the relevant factors here, the ones that we've talked about today. The prosecutor's failure to engage in any meaningful or dire on any areas of concern that he had, whether it be the negative experiences or the criminal convictions. The state's confusion about the two black jurors. And then third, the prosecutor's mischaracterization of what the jurors actually said. That is clear evidence of pretext and this court, there's no evidence the court considered that. And then four, the disparate impact itself of the criteria being used to exclude these jurors. We would ask this court to disregard the state's appellate arguments. They're based on an inaccurate reading of the record. The state alleges that all three jurors had a negative experience with Urbana. The record clearly shows only juror 148 mentioned an interaction with Urbana police. Juror 99, his misdemeanor, his negative experience happened 14 years prior when he didn't live in the Champaign-Urbana area. And 107 was very clear. It was the U of I police. Nothing to do with Urbana police. If there are no further questions for me on the Batson issue, we would ask this court to reverse this conviction to remand him for a new trial so he can have a trial afforded by the Constitution without the taint of racial discrimination in his jury selection. Thank you. We'll hear from you on rebuttal. Thank you. May it please the court, counsel. I first want to address the defense counsel's reply brief where she states the state's arguments are predicated on a distorted and incorrect reading of the record that two of the three struck jurors did not even have an experience with Urbana police. That is incorrect. The record clearly contradicts that. Juror 99, which the reply brief cites the exchange between the prosecutor and Juror 99 mentioning a misdemeanor from 14 years ago, that cite ends with the prosecutor's question, that wouldn't have been here in this community. Juror 99 says no. The citation ends there. What happens in the transcript is directly after that, Juror 99 mentions his Urbana misdemeanor from two years ago. Juror 148, there's no dispute. He had a negative experience with Urbana law enforcement. And Juror 107, cited directly above this, they're asking the whole panel, have either of you ever had a negative experience with law enforcement? Juror 107 says yes, I have. Would that be here in this community? Answer, yes. So all three of them have experience with Urbana law enforcement. This was U of I police. However, he clearly stated on the record that this was in this community. It was a different police department. However, it was in Urbana community. So the state rejects the characterization in the reply brief. First, about the standard of review. It's clearly manifest way to the evidence in this situation. People v. Mack is clear on that. The Illinois Supreme Court case I cited. In People v. Mack, they held that it should be a manifest way to the evidence standard, even when the judge was a different judge in the Batson hearing as it was during the voir dire proceedings. Here, the judge was the same. More importantly, the judge specifically stated on the record here that its observations that these were nondiscriminatory preemptory challenges was based on his observation of the whole voir dire proceeding, as well as the prosecutor's behavior or demeanor or credibility in his race-neutral explanations. That's important. As the U.S. Supreme Court in Hernandez stated, most of the time that's all you have to go on, is whether the prosecutor's excuse or explanation should be believed. They state that there will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. Here, the trial court was obviously in the superior position to evaluate the prosecutor's credibility in these explanations. He found that the prosecutor's explanation was valid and that these were nondiscriminatory preemptory challenges. That was the right decision, but more importantly, it should show that on review, the trial court's evaluations of credibility should be given great deference. Moving on to the merits. The prosecutor asked every single potential juror the same question, have you had a negative experience with law enforcement? The only three that suggested they had a negative experience were the three in the subject appeal. Jurors 99, 107, and 148. That right there should end the analysis. This is a completely race neutral reason to exclude these jurors. Especially when, as in this case, the two primary witnesses are law enforcement officers. Any hint or vague suggestion that somebody might not treat their testimony fair and impartially, or that somebody might not believe them because of their occupation as police officers, why would a prosecutor ever take the chance of having these people as members of the jury? Right there is a completely valid, and I would say good, race neutral reason to excuse these three jurors. There was more support for that. Juror 107, he was the Native American, said that he had numerous family members charged of serious crimes, and that he specifically would have trouble believing the testimony of at least the University of Illinois police officers if they were to testify in this case. Again, why would a prosecutor ever take the chance on a potential juror that says that? Juror 99 was, as the exchange shows, he was not forthright about his more recent misdemeanor. He brings up the 14-year-old misdemeanor. Initially, when asked, the prosecutor sort of has to goad him into talking about the Urbana misdemeanor from two years ago. And still, when he brings up that, he says, yes, I was convicted of that, or yes, I paid the fine. He was actually sentenced to jail for that. He said, I paid the fine twice, never mentioning jail. From a prosecutor's perspective, that he even had to sort of remind this juror that he was convicted of a misdemeanor in this city two years ago. On top of, he explains his punishment, or volunteers his punishment as paying the fine. From a prosecutor's perspective, this is either minimizing or discounting the seriousness of his conviction. That, on top of having a negative experience with law enforcement, was clearly a race-neutral, multiple race-neutral explanations for excusing that juror. And finally, Juror 148 was asked by the trial court, do you have any prior convictions? He flat out lied and said no. He had prior convictions for domestic battery, drug possession, and driving while suspended. Defense counsel states that the prosecutor failed to follow up on these questions. The prosecutor wasn't obligated to follow up on these questions. The guy lied. He used a peremptory challenge on him, especially after he says that there was an experience with law enforcement that he, quote, didn't agree with. Whether he says it's negative or he didn't agree with it, the point is still the same. He felt that the law enforcement community treated him wrong at some point in the past. At any rate, when the two primary witnesses are Urbana police officers, and these three all suggest that they had a negative experience in the past, no prosecutor would ever take the chance on these three. And as for the minority communities getting a disparate impact as far as negative law enforcement experience, to take that suggestion to its full conclusion, that would be meaning that prosecutors can no longer ask whether someone has a negative experience with law enforcement, which is ridiculous when the primary witnesses in the case are in fact law enforcement. They want to ensure that a panel that can be fair and impartial towards the primary witnesses of a case like this one. So, clearly, the prosecutor striking these jurors was not race-related. More importantly, the trial court's decision that this wasn't race-related was not against the manifest weight of the evidence and was not clearly erroneous. The defendant mentions there were other jurors that were accepted who also had prior convictions. None of these jurors said that they had a negative experience with law enforcement. Of course, Mack states that a characteristic deemed to be unfavorable in one prospective juror may be favorable in another. It never comes down to a single criteria. Here, the obvious striking difference is that these, although had prior convictions, they apparently agreed that the experience with law enforcement was not negative, because they didn't say anything when the prosecutor asked them that question. So, the trial court's decision that these were race-neutral was not against the manifest weight of the evidence. And if there are no more questions on that issue, Mr. Robinson will express, will talk about Castleberry's application to cases like this where the circuit clerk improperly imposes fines and fees. Thank you. Thank you. Please, the court. Just briefly, I wanted to take the opportunity in this case, and ironically, it's probably the ideal panel to express the State's Attorney's position with regard to Castleberry in these cases. As Ms. Nichols-Cook outlined, given that this case is sort of, in my view, the opening salvo in these types of cases following Castleberry, I thought it was important to come here and make sure that we were all on the same page, and I think that we are. I would describe these types of cases where, for example, you have the clerk improperly imposing a fine, which is part of a sentence, which is separate from a fee, renders a sentence void in the way that we used to talk about it. I think it's probably better described, stealing a phrase from our Crawford analysis, to describe it as a sentencing non-event. When a circuit clerk, for example, imposes a fine, in my mind it's really no different than in the rare case where we see someone from DOC, a bureaucrat there imposing a $300 fine. That has no import on a defendant at all, it's not part of his sentence, just like if the bailiff tried to impose a sentence on the State's Attorney. It's only when the State ultimately tries to collect that, that it's a problem. The bottom line here, from our perspective, is that in a case like this, where the clerk improperly imposes the fine, there is no necessity for a Castleberry analysis, because forfeiture doesn't apply. And the public policy underlying that is fairly self-evident, based on what happens at the trial level. Because in many of these cases, what happens is, the defendant could never preserve this type of thing. Because the court would do what it sometimes does, is mark on the file folder $1,000 in fines, ships it down. Maybe two or three days later, the defendant files a motion to reconsider sentence, but the clerk hasn't even imposed those fines yet. So if we were to presuppose that Castleberry applied to the situation, it wouldn't be helpful as a public policy matter, because in fact, most of these defendants couldn't preserve it if they wanted to. But again, I go back to my original point, it's not part of a sentence and not part of what they have to preserve. And I say that because I think ultimately, when someone unauthorized to enter a sentence, or attempts to enter a sentence against the defendant, if it were ultimately to be imposed on the defendant, I think that would be a violation of due process, quite frankly. So, I think this really comports, in sort of an odd way, with what Justice Kinect wrote in Warren, and in the partial dissents, as in Breeden, that Justice Appleton wrote about. And I know Justice Pope has done a lot of work on these fines and fees issues too. When I first started looking at these fines and fees issues, I think I was about 6'4", and now I'm 5'8", on a good day. But the bottom line is, the state's position, when the trial judge, who's the proper sentencing authority, imposes the wrong fine, then we believe, because that's part of the sentence that Castleberry applies. In a case like this, as I said before, I think it's best described, stealing a phrase from the Crawford line of cases, it's a sentencing non-event. We should utterly ignore it. And in a case like this, I think the Supreme Court would be just fine with this court sending it back, as this court has been doing in cases, to allow the circuit judge, who is the court of original jurisdiction, to go in and fix whatever should be fixed in this case. The only problem, from the state's perspective, that the Supreme Court had in Castleberry, was that because the appellate court doesn't have supervisory authority,  in fact, if the state wanted to do that, we would have to file a mandamus petition. I think that road has to be traveled both ways, for the defendant and the state, in that regard. And so, how that would play out, just as an aside, it really doesn't apply to this case, but just as an aside, we're in a case where a trial judge imposed a fine that should not have been imposed on the defendant. The defendant would have to preserve that issue, and then plain error analysis would have to be undertaken on review. Or, I think then that line of cases, Montgomery, Ehlers, and so forth, would then kick in. Ultimately, in the outline case, where you had, say, $1,000 worth of fines imposed, and $500 of those fines were improperly imposed, but there were $300 of other fines sort of outstanding, my reading of Castleberry, and our position at the Appellate Prosecutor's Office, is that this court could impose the proper fines, because the ultimate amount of fines imposed in that case would be $800, which would be $200 lower than the aggregate sentence that defendant was ultimately imposed. When that case comes up, this court may take that view, it may not, but I just wanted to outline sort of what the State's Attorney's position was in that regard. If there's any other questions? No. Thank you. Thank you. Ms. Bottle? I'm going to just turn back to Batson for one moment to address a couple of issues that Mr. McNeil brought up. Regarding the standard of review, we discussed this in our reply brief, but we do believe that this case is distinguishable from Mack. Since Mack, the court decided wily, which held that a trial court which mismanages the Batson procedure is not entitled to deference. And so while clear error may be the standard of review most often used in Batson procedures, when the court has not followed the right procedures, this court is not obligated to give him deference. Additionally, in Mack, the court said the facts are on the record, they're undisputed. And here, the judge makes no factual findings, no credibility determinations regarding either the juror's response or the prosecutor's offer of justification. So we make the argument in our reply brief that this court could adopt the bifurcated standard of review, review the issue of Law de Novo, while still allowing deference to individuals. We don't make any factual findings that do appear in the record, at the same time arguing that this record is deficient in that regard. Regarding the state's argument that this was Urbana police, I think that it's impractical to try to say that U of I police and Urbana police are the same. They're completely different departments, they're different officers, they have different functions in different territories, and so an experience with U of I shouldn't necessarily be computed to a bias against Urbana. And that's what the state's asking you to do. Additionally, the fact that the witnesses and the victims are Urbana police, that doesn't mean that their testimony gets weighed any greater than any other witness. That's another question that comes up in court higher. Will you give more weight to this witness because it's a police officer? If you answer yes, they're probably going to strike you as well, because just because you're a police officer doesn't mean you're more credible than anybody else. And for the same regard, just because you've had one negative experience with law enforcement doesn't mean that you can't be fair and impartial in this case. And these jurors were never given that opportunity, they were never given that chance to tell the court they could be fair and impartial and they could put aside any prior experiences and even got to explore that. I think it's also important when you look at the procedure this trial court followed, the prosecutor in 148 said, yeah, it was Urbana police. He said, well, then I have to excuse you. There was no opportunity for defense counsel to try to rehabilitate him. There was no break, and let's go to chambers and discuss this. The prosecutor just dismissed him right there in front of everybody. And so that also plays a part in the record that we have. And so I think this court should take that into consideration as well. Additionally, I think that the state makes several unfair leaps when they talk about juror 99 in 148 having to be goaded or flat out lying. But that's not what the record shows. You have a prosecutor offering some background information that he alone has that is not on the record other than his justification. And we don't have a judge saying, I find it credible that he believes this juror 148 who is this person on the criminal background check. And I think that is the conclusion I have. And we would ask this court to find that racial discrimination did occur in this jury selection and remand Mr. Brown's case for a new trial. Thank you. Thank you. We'll take the matter under advisement and await the readiness of the next case.